| | |
|---|---|
| 1 | Linda Auerbach Allderdice [SBN 81275]<br>Mark E. Baker [Admitted *Pro Hac Vice*] |
| 2 | Tianjing Zhang [SBN 256759]<br>HOLLAND & KNIGHT LLP |
| 3 | 50 California Street, 28th Floor<br>San Francisco, California 94111 |
| 4 | Telephone: (415) 743-6900<br>Facsimile: (415) 743-6910 |
| 5 | Attorneys for Defendant<br>Scitor Corporation, a Delaware Corporation |

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| WAYNE LUM, an individual,<br><br>           Plaintiff,<br><br>vs.<br><br>SCITOR CORPORATION, a Delaware Corporation, and DOES 1-50,<br><br>           Defendants. | No. C 09-05828 JF<br><br>**NOTICE OF MOTION AND MOTION; AND POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT SCITOR CORPORATION'S <u>MOTION FOR CHANGE OF VENUE</u>**<br><br>[Declarations of Mark E. Baker, Kathleen Dickman and Donald Fisher in support of Motion; and Proposed Order are filed concurrently herewith]<br><br>28 U.S.C. § 1404(a)<br><br>Date: March 26, 2010<br>Time: 9:00 a.m.<br>Dept.: Courtroom 3, 5th Floor<br>Judge: Hon. Jeremy Fogel |

///
///
///

– 1 –

## NOTICE OF MOTION

NOTICE IS HEREBY GIVEN that on Friday, March 26, 2010 at 9:00 a.m., or as soon thereafter as counsel may be heard, Defendant Scitor Corporation ("Scitor") shall move this Court to order a change of venue and transfer of the above-captioned case to the United States District Court for the Eastern District of Virginia, Alexandria Division ("EDVA") pursuant to 28 U.S.C. §1404(a).

The motion shall be made on the grounds, as more particularly set forth in the points and authorities below, that because all key witnesses (particularly third-party government witnesses) except for Plaintiff, as well as the main documentary evidence pertaining to the key issues of this case, are located within the EDVA, justice and judicial economy will be best served by transferring this case to the EDVA.

The motion is supported by the Declarations of Mark E. Baker, Kathleen Dickman and Donald Fisher, and is accompanied by a Proposed Order, all of which are filed herewith.

## STATEMENT OF RELIEF REQUESTED

By this motion, Defendant Scitor requests this Court to grant Scitor's request for change of venue and order transfer of this case from this Court to the United States District Court for the Eastern District of Virginia, Alexandria Division.

## POINTS AND AUTHORITIES IN SUPPORT OF MOTION

### I. INTRODUCTION

This disability discrimination case arises from Scitor's termination of plaintiff Wayne Lum's ("Lum") employment after officials of the United States government – all located in Northern Virginia – revoked Lum's security clearance following his refusal to complete a polygraph examination. Having the clearance was a government requirement for Lum keeping his job in support of Scitor's highly classified work as a U.S. government contractor. The government officials who decided to revoke Lum's clearance are located within the jurisdiction of the United States District Court for the Eastern District of Virginia ("EDVA"). The government officials who directed that Lum submit to a polygraph examination as a condition for maintaining his clearance and who dealt with Lum's response to those directives (*see*

Complaint ¶¶ 12-14) also are located in Virginia. The Scitor management personnel who interfaced with Lum concerning the government's polygraph examination and security clearance directives are located at Scitor's corporate headquarters in Herndon, Virginia within the EDVA. Any documentary evidence pertaining to Lum's polygraph and security clearance issues is in Virginia.

Under 28 U.S.C. section 1404(a), "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Here, because all of the key witnesses (particularly third-party government witnesses) except Lum, as well as the documents pertaining to Lum's polygraph and security clearance issues, are located within the EDVA, justice will be best served by transferring this case. A transfer will (1) enhance the convenience of the parties and witnesses; (2) make access to documents and records easier; (3) place the action in the forum where government officials made the operative decisions regarding Lum's security clearance; (4) substantially reduce the overall costs of the litigation; (5) assure compulsory process of key non-party witnesses; and (6) ease access to sources of proof.

## II. STATEMENT OF FACTS

### A. The Security Clearance Requirements At The Center of Lum's Allegations Arise From Contracts Administered In Virginia.

Scitor performs various government contracts for agencies of the United States government engaged in intelligence-related activities. Declaration of Kathleen Dickman ("KD") ¶3.[1] Those contracts and related requirements specify that most of the Scitor personnel who work on and support the contracts hold a security clearance. KD ¶3; Declaration of Donald Fisher ("DF") ¶2. The key Scitor contract administration personnel who will testify concerning the security-related requirements of the contracts are all located at Scitor's offices within the EDVA. KD ¶3. Corporate compliance with the security clearance requirements of the contracts is administered by Scitor's Virginia-based Security Department personnel, who regularly receive

---

[1] Declarations in support of this motion are filed concurrently herewith and are referred to by the first and last initials of the declarant followed by the relevant paragraph number – e.g., Declaration of Kathleen Dickman ¶3 is "KD ¶3."

training, review legal and government guidance materials, and deal with government officials concerning those requirements. DF ¶2. Those personnel will be necessary witnesses in this case. KD ¶3; DF ¶3.

### B. Pursuant To Scitor's Virginia-Based Government Contracts, Lum's Job Required Him To Have A Security Clearance.

A substantial part of Scitor's work entails the operation and maintenance of classified government computer networks, including highly secret compartmentalized information networks that are subject to strict security limits on who can access the networks, how the networks may be used, and where the network hardware is located. DF ¶4. Lum worked as Scitor's West Coast Information Technology Manager and was responsible in part for the support and administration of one of the classified networks. KD ¶4. Lum had high-level network administrator passwords and rights that enabled him to broadly access, use, and manipulate information and data on the network. KD ¶4. Lum's work required that he periodically travel to Scitor's offices in Virginia for meetings, training, and other activities. KD ¶4.

Because of the sensitive nature of his duties, Lum was required by Scitor's government contracts to maintain a Top Secret/Sensitive Compartmentalized Information ("TS/SCI") security clearance. KD ¶5; DF ¶4. Scitor cannot employ anyone in Lum's job who does not hold a TS/SCI clearance. KD ¶5. The Scitor personnel who will testify on Lum's duties and his security clearance requirements are all located at Scitor's offices in Virginia. KD ¶5; DF ¶4.

### C. The Government's National Reconnaissance Office In Virginia Revoked Lum's Security Clearance When He Failed To Take A Polygraph Examination.

Security clearances must be renewed every five years. DF ¶5. For a TS/SCI security clearance, the renewal process requires the clearance holder to submit to a polygraph examination administered by a polygrapher of the U.S. Government's National Reconnaissance Office ("NRO"). DF ¶5. NRO officials have complete control over such polygraph examinations, including but not limited to who must take the examinations, when they must be taken, how the examinations are administered, assessment of examination results, and what to do when an employee refuses to take an examination. DF ¶5. Scitor does not control any of these

matters. DF ¶5. With respect to security clearance requirements and polygraph examinations, Scitor's Security personnel function as a conduit for the exchange of information and directives between the NRO and Scitor employees. DF ¶5.

Lum's security clearance came up for renewal in 2009, and the NRO directed that he submit to a polygraph examination. DF ¶7. When Lum failed to appear for the examination as directed by NRO staff and ultimately refused to submit to an examination, NRO officials in Virginia revoked his security clearance and directed Scitor's Security personnel in Virginia to "de-brief" Lum. DF ¶¶7-8. "De-briefing" is the process of revoking an employee's security clearance credentials, advising the employee of his continuing obligations of confidentiality and secrecy, and completing certain paperwork. DF ¶8.

Once the NRO ordered Lum's de-briefing, Scitor managers in Virginia assessed his status under the Company's government contract and security requirements, determined that he no longer met an essential qualification for his job, and concluded that termination of his employment was required. KD ¶6. Other employees who have lost their clearances have been similarly terminated. KD ¶7.

Although Lum was informed of his de-briefing via a phone call to him in California, the NRO decisions precipitating that call were made at the NRO's Virginia headquarters. DF ¶¶6-8. Those decisions were communicated in the first instance to Scitor Security personnel in Virginia, and the de-briefing process was activated by Scitor managers in Virginia. DF ¶8. The NRO and Scitor witnesses with knowledge of these events are all in Virginia. DF ¶6-8.

### D. All Documentation Pertaining To Lum's Security Clearance, De-Briefing, And Termination Is Located In Virginia.

To the extent that Scitor has documentation on Lum's security clearance, de-briefing, and termination, those materials are retained at the Company's Virginia offices, as they are for other employees. KD ¶¶7-8. Given that the NRO's decisions on Lum were made by NRO personnel in Virginia, any government records relevant to this case are likely also in Virginia. DF ¶9.

///
///

## III. ARGUMENT

### A. This Court Has Discretion To Transfer This Case To The EDVA.

"For the convenience of the parties and witnesses, in the interest of justice," this Court may in its discretion order the transfer of an action "to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Although a section 1404(a) transfer derives from the common law of *forum non conveniens*, the wording of section 1404 demonstrates Congress' intent "to permit courts to grant transfers *upon a lesser showing of inconvenience*" than is required for dismissal on the ground of *forum non conveniens*. *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955) (emphasis added). Motions for transfer should be adjudicated according to an individualized assessment of convenience and fairness based on the facts of each case. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000); *E. & J. Gallo Winery v. F. & P.S.P.A.*, 899 F. Supp. 465, 466 (E.D. Cal. 1994); *see also Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 639 (9th Cir. 1988) (""Weighing of factors for and against transfer involves subtle considerations and is best left to the discretion of the trial judge"").

### B. This Action Could Have Been Brought In The EDVA.

Lum could have commenced this action in the Eastern District of Virginia, which is a proper venue, has subject matter jurisdiction based on diversity of citizenship, and has personal jurisdiction because Scitor resides there and its personnel took the operative actions there. Because all of the jurisdictional elements would have been met if the action had been commenced in the EDVA, that Court is a suitable transferee Court under section 1404(a). *See Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960).

### C. The Factors Considered Under Section 1404(a) Favor Transfer.

The following factors may be considered in assessing a motion to transfer: (1) where the relevant agreements or decisions were entered into; (2) the forum's familiarity with the governing law; (3) the plaintiff's choice of forum; (4) the parties' contacts with the forum; (5) the forum's contacts relating to the plaintiff's cause of action; (6) differences in the cost of litigation in the two forums; (7) the availability of compulsory process to compel attendance of non-party witnesses; and (8) ease of access to sources of proof. *See Jones v. GNC Franchising, Inc.*, 211

Holland & Knight LLP
50 California Street, 28th Floor
San Francisco, CA 94111
Tel: (415) 743-6900

F.3d 495, 498-99 (9th Cir. 2000).[2] No single factor is dispositive. *Stewart Org. Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). Considered in their totality, and particularly in light of the greater convenience and reduced cost that transfer would afford to key government witnesses, these factors dictate that this case should be transferred to the EDVA.

### 1. The Key Decisions Were All Made In Virginia.

The NRO's directives pertaining to Lum's polygraph examination and clearance revocation were all made by officials in Virginia. DF ¶¶7-9. Scitor's decisions and actions in response to the NRO de-briefing directive all occurred in Virginia. KD ¶6. Scitor terminated Lum's employment only because Virginia-based NRO officials revoked his security clearance, rendering him unable to meet an essential requirement of his job. KD ¶¶6, 9. Had those decisions and actions not occurred, there would have been no termination and there would be no lawsuit. KD ¶9. Consequently, the operative decisions that are at the heart of this case – and the witnesses who made those decisions and carried them out – are based in Virginia.

### 2. The Eastern District Of Virginia Can Readily Apply The California Law That Governs Lum's Claims And The Federal Government Contract And Security Requirements That Govern Scitor's Defenses.

While Lum's claims are brought under the California Fair Employment and Housing Act, the Act's governing legal principles are not so unique or complicated as to require the expertise of a California-based court. Lum makes straightforward claims of discriminatory termination based on an alleged disability and failure to accommodate the alleged disability. Those claims involve legal principles that are essentially like those that apply under the federal Americans With Disabilities Act and Rehabilitation Act, as well as comparable statutes in Virginia and many other states. The Judges of the EDVA are well versed in interpreting and applying such legal principles.

In addition to being well equipped to apply California disability discrimination law, the EDVA is particularly well suited to address the legal and policy issues associated with security clearance requirements, the operation and requirements of the NRO, and the related implications

---

[2] Convenience of counsel is not considered. *In re Horseshoe Entertainment*, 337 F.3d 429, 434 (5th Cir. 2003).

MOTION FOR CHANGE OF VENUE AND POINTS AND AUTHORITIES IN SUPPORT THEREOF

Case No. 5:09-cv-05828-JF

1  of those requirements for government contractors. Judges in the EDVA have presided over
2  many sensitive intelligence-related cases, including the Aldrich Ames spy case in 1994 and the
3  prosecutions of CIA spy Harold Nicholson (1997), FBI spy Earl Pitts (1997), NRO spy David
4  Sheldon Boone (1998), FBI spy Robert Hanssen (2001), and NRO spy Brian Patrick Regan
5  (2003). Declaration of Mark Baker ("MB") ¶ 3. EDVA Judges regularly deal with a plethora of
6  security and other legal issues that are unique to government contractors arising from the high
7  concentration of such businesses in the Washington, D.C. metropolitan area and in Virginia's
8  Tidewater Region, which has a dense concentration of U.S. military installations and defense
9  contractors. MB ¶4.

### 3. Lum's Choice Of Forum Is Not Dispositive.

Because the "convenience" and "justice" factors strongly favor transfer, Lum's choice of forum is not due substantial weight. *See Florens Container v. Cho Yang Shipping*, 245 F. Supp. 2d 1086, 1092 (N.D. Cal. 2002). "[T]he weight given to plaintiff's choice of forum is lessened if the chosen forum has relatively weak connections with the operative facts giving rise to the claim." *Von Holdt v. Husky Injection Molding Sys.*, 887 F. Supp 185, 188 (N.D. Ill. 1995).

### 4. The Parties' Greater Contacts With Virginia Favor Transfer.

Although Lum worked predominantly in California, Lum's job performance is not at issue in this case and the parties' more extensive *relevant* contacts are with Northern Virginia. KD ¶9. Scitor's corporate headquarters is located in Virginia, where the Company's Security, Human Resources, and Contracts personnel who will testify about security clearance and government contract requirements are located. KD ¶¶3, 5. The Scitor personnel who dealt directly with the NRO and with Lum on his polygraph and clearance issues are in Virginia. DF ¶¶6-8. The Scitor management personnel who determined that Lum's loss of his security clearance required his termination are all in Virginia. KD¶ 6. Lum's direct supervisor is in Virginia. KD¶ 4.

Lum himself had regular contact with Virginia through ongoing contacts with his supervisor, regular interaction with other Information Technology personnel and Security personnel in Virginia, and periodic business trips to Virginia. KD ¶4.

– 8 –

//

### 5. The Extensive Contacts With Virginia Relating Directly To Plaintiff's Claims Favor Transfer.

As discussed above, decisions and directives of the NRO relating to Lum's polygraph examination and clearance revocation were the sole cause of his termination. KD ¶9. Those decisions and directives were made and communicated to Scitor in Virginia. DF ¶¶7-9. Scitor's personnel who were informed of the NRO's decisions and directives, interacted with the NRO on those matters, and interfaced with Lum on those matters are all in Virginia. DF ¶¶7-8; KD ¶¶3, 6. Any documentation relating to NRO directives, and to Scitor's associated actions in response, is in Virginia. KD ¶¶7-8; DF ¶9. The fact that Lum learned in California of his de-briefing and termination does not overcome the substantial weight of the contacts with Virginia.

### 6. Because The Litigation Will Be Substantially Cheaper In Virginia, Cost Considerations Favor Transfer.

The only witness with information that is central to Lum's claims who is not located in Virginia is Lum himself. All of the relevant documentation is located in Virginia, except for whatever records Lum may have in his possession. KD ¶¶7-8; DF ¶9. It will be substantially cheaper for both parties if depositions and document production occur in Virginia, and if trial witnesses can testify close to their homes in Virginia without the need for cross-country travel and overnight stays in California.

It will also be cheaper for the public to litigate this case in Virginia. Because the key witnesses are government personnel, the significant time required for travel to California for testimony would take them away from their government duties and decrease government efficiency and productivity.

### 7. The Greater Ease Of Compelling Attendance Of Third Party Witnesses In Virginia Favors Transfer.

Because decisions and directives of NRO personnel in Virginia are at the center of Lum's polygraph process and ultimately his loss of clearance and termination, this case is particularly dependent upon third-party witnesses. Those third-party witnesses, all located at NRO

Holland & Knight LLP
50 California Street, 28th Floor
San Francisco, CA 94111
Tel: (415) 743-6900

headquarters in Virginia, include: (i) the NRO Polygraph Office officials who reviewed Lum's complaint about the allegedly harassing polygraph examiner and informed Scitor of the results of that review; and (ii) officials within the NRO's Personnel Security Division, Customer Relations Branch, who decided to revoke Lum's clearance and ordered Scitor to de-brief him.[3] DF ¶ 6.

These key witnesses can only be compelled to appear for live testimony at trial by the EDVA. *See* Fed. R. Civ. P. 45(a)(2)(A) and (b)(2). Even if these witnesses agreed to appear voluntarily at a trial in this Court, the substantial cost of that attendance would add greatly to the overall costs and burden of the case. Consequently, the case should be transferred to the EDVA.

### 8. The Greater Ease Of Access To Proof In Virginia Favors Transfer.

The overwhelming weight of the testamentary and documentary proof resides in Virginia. That proof can be more easily accessed through proceedings located in Virginia.

## IV. CONCLUSION

For all of the reasons stated herein, and based on the supporting declarations, Scitor respectfully submits that the motion for change of venue should be granted and that the action should be transferred to the United States District Court for the Eastern District of Virginia, Alexandria Division.

Respectfully submitted,

HOLLAND & KNIGHT LLP

DATE: February 16, 2010

Linda Auerbach Allderdice
Mark E. Baker [Admitted *Pro Hac Vice*]
Tianjing Zhang
Attorneys for Defendant Scitor Corporation

# 9109766_v2

---

[3] Scitor is prohibited by government restrictions from disclosing the names of specific NRO personnel. DF ¶6.